```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | |
|---|---|
| JOHN LANDING,<br><br>      Plaintiff,<br><br>      v.<br><br>TITAN STEEL CORPORATION,<br><br>      Defendant. | Case No. 20 C 3659<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, John Landing ("Landing"), was employed by Defendant, Titan Steel Corporation ("Titan"), as a second shift forklift driver. Landing worked for Titan from July 2018 until October 2019 when he was laid off. Prior to his layoff he contends that he was victim of unlawful employment practices including unlawful discrimination and harassment because of his race and of unlawful retaliation for engaging in activities which led to unlawful termination. He has filed a four-count Complaint, two counts for race discrimination and retaliation under Title VII and two counts for race discrimination and retaliation under the Illinois Human Rights Act ("IHRA"). Titan has moved for summary judgment (Dkt. No. 23.) as to all counts. The Motion is granted.

## I. FACTS

Titan is a distributor of tin mill products, hot and cold rolled steel coated products, and specially coated products. (Pl.'s Resp. to Def.'s Stmt of Facts ("PSOF") ¶ 4, Dkt. No. 30.) Landing, an African American, was a forklift driver on Titan's second shift. (*Id*. ¶ 10.) On May 8, 2019, Plaintiff reported an incident to Titan's plant manager, Mike Seidel ("Seidel"), where another employee, Jose Valdez ("Valdez"), had gestured at him using a coil strap that Plaintiff interpreted to be a noose symbol. (*Id*. ¶¶ 11–12). Seidel immediately summoned Landing, Valdez, and other employees into his office to discuss the incident. (*Id*. ¶14.) At the meeting Valdez apologized to Landing. (*Id*.) Landing does not recall whether he asked to have Valdez fired. (Landing Dep. 66:11–66:16, Def.'s Stmt. Of Facts, Ex. C, Dkt. No. 25-3.) After the meeting Landing had no more interactions with Valdez. (PSOF ¶ 15.)

The next day, upon learning of the incident, Mark Hunt ("Hunt"), Titan's business manager, consulted with Titan's President and Titan's legal counsel and decided to suspend Valdez without pay while further disciplinary action was contemplated. (*Id*. ¶ 16.) After reporting this incident to Titan, Landing complained to Hunt that employees were staring or glaring at him, which made Landing uncomfortable. (Def.'s Resp. to Pl. Stmt. of Facts ("DSOF") ¶ 16, Dkt. No. 33.) On May 17, 2019, Valdez was terminated. (PSOF ¶ 18.) On May 10, 2019, Hunt held a meeting of

all of Titan employees to retrain them on Titan's harassment, diversity, inclusion, and mutual respect policies. (*Id.* ¶ 17.)

According to Landing, on July 15, 2018, he reported to Titan that Paul Myczek ("Myczek"), a machine operator, commented to Plaintiff that another African American employee who had dreadlocks "must be your brother because you have the same hair." (*Id.* ¶¶ 20–21.) Titan investigated the incident by interviewing Landing, Myczek, and other employees who may have heard the comment. (*Id.* ¶ 22.) Myczek denied making the comment and the other employees interviewed denied having heard it. (*Id.* ¶ 23.)

On October 21, 2019, Titan laid off its entire second shift, which included Landing and four others. (*Id.* ¶ 30.) Titan claims that the reason for the layoff was due to a shortage of orders. (Def.'s Answer to Pl.'s Interrogs. No. 5, Def.'s Stmt. Of Facts, Ex. G, Dkt. No. 25-7.) Landing was the only laid off employee who was African American, the rest were Caucasian and Hispanic. (PSOF ¶ 34.) On May 6, 2019, Plaintiff received a write-up for attendance violations. (*Id.* ¶ 26.) Between August 2018 and May 2019, Landing called off work four times and was tardy twice. (*Id.* ¶ 27.) Landing filed a complaint with the Equal Employment Opportunity Commission on December 9, 2019. (EEOC Compl., Def.'s Stmt. Of Facts, Ex. K, Dkt. No. 25-11.) The second shift was reinstated on April 13, 2020. (DSOF ¶ 28.) Two of the five laid off were rehired. (*Id.* ¶¶ 29-30). Landing was not asked back. (*Id.* ¶ 27.)

## II. DISCUSSION

Landing's racial harassment claim is based on the two incidents: the Valdez noose gesture in May 2019, and the Myczek dreadlocks incident in July 2018. The latter incident allegedly occurred in July 2018, and therefore was not within 300 days of the filing of Landing's EEOC complaint and cannot be reasonably linked together as a single course of conduct. *Tinner v. United Insurance Co. of America,* 308 F.3d 697, 708 (7th Cir. 2002). The Myczek incident was of a different type and made by a different individual. Even if it was not untimely, it was merely a stray comment that clearly would not meet the requirement of objective offensiveness that alters the conditions of employment, and it would not be a basis for employer liability because the harasser was not a supervisor. *Vance v. Ball State University,* 646 F.3d 461, 469 (7th Cir. 2011) ("Title VII regulates the conduct of employers, not individual employees"). Further, Titan adequately investigated Myczek's remark.

The noose incident is of course exceedingly serious. However once again Landing is seeking to hold Titan responsible even though Valdez was an employee and not a supervisor. Here Titan took the complaint very seriously, held a hearing, suspended Valdez without pay, and ultimately fired him so that he never worked for Titan again. As the Seventh Circuit in *Vance* has said, "Prompt investigation is the 'hall mark of reasonable corrective action.'"

*Id*. at 473 (quoting *Cerros v. Steel Technologies, Inc.,* 398 F.3d, 944, 954 (7th Cir. 2005)). Here Titan immediately investigated, suspended the offender without pay and then fired him without reinstatement. To put it mildly this is "prompt corrective action." The only other harassment claim is that certain of Titan employees who related to Valdez glared or stared at him after the Valdez incident. However, the Seventh Circuit has said multiple times that Title VII is "not a general civility code." *Ford v. Minteq Shapes and Services, Inc.,* 587 F.3d 845, 848 (7th Cir. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Landing's final claim is that Titan retaliated against him for complaining about the harassment. He claims that he was laid off and not asked to return because of his complaints of racial harassment. To establish a *prima facie* case of race discrimination, an employee must show that (1) he is a member of a racial category, (2) his job performance met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) another similarly situated employee who was not in his racial category was treated more favorably. *Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 750-751 (7th Cir. 2006). If the employer articulates a nondiscriminatory reason for the employment action, the employee must show evidence of pretext. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971,983 (7th Cir. 1999). In this case Titan has proffered as an explanation for the layoff, a lack of

business. Landing, instead of showing some evidence of pretext, merely asserts that Titan did not prove the lack of business. Landing's assertion does not meet his burden, as required by the Seventh Circuit.

Landing also complains of retaliation because two of the second shift employees were rehired, but he was not. Titan points out that he did not complain of failure to rehire either in his EEOC complaint, or his IDHA complaint, or in his District Court Complaint. It is too late to raise an issue for the first time in a summary judgment brief. *BRC Rubber I Plastics, Inc. v. Continental Carbon Co.,* 900 F.3d 529, 541 (7th Cir. 2018).

Finally Landing claims that he was retaliated against because he was assigned extra work that should have been done by the earlier shift. When questioned about this claim at his deposition, he testified that he didn't know if his workload changed after the incident with Valdez. He merely said, "it might have." (Landing Dep. 82:7.) When asked if he could recall anything in particular, his answer was "No." (*Id*. 82:9.)

It is clear that Landing has failed to show that Titan failed to respond to his legitimate complaint involving the noose by investigating and punishing the culprit in a reasonable manner. Landing has also failed to show that Titan retaliated against him in any manner that would violate either Title VII or the IHRA Act. Therefore, summary judgment is appropriate.

## III. <u>CONCLUSION</u>

For the reasons stated herein, Titan's Motion for Summary Judgment is granted. Counts I, II, III, and IV are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/21/2022